UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br><br>ROBERT JOHN HULSCHER,<br><br>　　　　　　　　Defendant. | CR16-40070-01<br><br>GOVERNMENT'S MEMORANDUM IN RESISTANCE TO DEFENDANT'S MOTION TO SUPPRESS |

The Government resists Defendant's January 31, 2017, Motion to Suppress and submits the following memorandum in support of its resistance.

I.　Introduction

Defendant Robert Hulscher's motion seeks to suppress physical evidence obtained from the April 11, 2016, logical extraction of his cellular phone, which was conducted by the Huron, South Dakota Police Department in connection with an unrelated investigation and arrest, which occurred in March 2016. Docket 223; 224. Defendant contends that the retention of, subsequent examination of, and intended use of information in the present matter is a violation of his Fourth Amendment rights.

II.　Facts

On February 18, 2016, firearms were reported stolen from a Sioux Falls, South Dakota home. Four co-defendants: Robert Hulscher, Nicholas Hemsher, Nicolas Wingler, and Matthew Marshall were charged with offenses pertaining to the possession of firearms. Docket 1; Docket 181. Wingler and Marshall have

entered guilty pleas. Docket 95; Docket 108. Hulscher and Hemsher are scheduled for a joint trial to begin on February 22, 2017.

      a.  March 15, 2016 Huron Arrest

On March 15, 2016, Defendant was arrested in Huron, South Dakota by state authorities for activity relating to identity theft and forged checks (that investigation is not associated with the instant case in anyway).[1] At the time of his arrest Defendant was in possession of an iPhone 6 (serial number F17Q1MBQG5MC). While in the custody of law enforcement, but prior to search, law enforcement observed Hulscher received a text message, which stated, "you holdin [sic]?" Later, Patrol Sergeant, Mark Johnson[2] of the Huron Police Department requested a search warrant of the phone on March 16, 2016. His sworn affidavit is attached. It discussed counterfeiting and also noted "drug distribution/customers involving criminal activity." Moreover, he noted the necessity for the phone to be seized and processed by a "computer specialist."

A search warrant was issued by state court district judge, the Honorable Jon Erickson, on March 16, 2016. Judge Erickson authorized a broad search of the iPhone as proof had been made that the property: constituted evidence of the commission of a criminal offense; contraband, the fruits of a crime, or things otherwise criminally possessed; and property designed or intended for use in, or which is or has been used as the means of, committing a criminal offense. The search warrant was issues on a broad basis and commanded law enforcement

---

[1] Criminal File No. 02CRI16-000120, which was disposed of in May 2016.
[2] Sergeant Johnson executed the traffic stop and subsequent arrest and post-Miranda interview of Hulscher.

search: "(1) the content of any texts, including but not limited to incoming texts, sent texts, draft texts and deleted texts that were sent or received by the cellular device; (2) incoming or outgoing cell phone call records by the cellular communication devices; (3) the content of the address book for the cellular communication devices; (4) video and/or photography stored on the phones or in the internal memory of the cellular communication devices; and (5) Any other data on the communication device as it relates to this case." A copy of the search warrant is attached.

Subsequently, the phone was searched on or about April 11, 2016, by Detective Casey Spinsby with the Huron Police Department. Detective Spinsby conducted an examination of the phone and a "logical extraction." Unknown to the Government, the evidence extracted remained in the possession of the Huron Police Department and Hulscher's phone was ordered to be returned to his family on May 25, 2016.   A copy of the Motion and Order to Return the phone is attached.

      b. Government's acquisition of Huron evidence

On January 3, 2017, when the Honorable Karen Schrier granted a continuance in this matter, the Government continued its ongoing investigation as to both Defendant Hulscher and Hemsher. Pursuant to the continued and diligent efforts of the case agent several new items of discovery were located.

On January 12, 2017, ATF contacted the Huron Police Department to inquire about Defendant Hulscher. While investigating the Huron arrest he learned additional information. Specifically, it the Huron Police Department was

asked what phone number(s) Defendant had provided to their department. This information with the hope of matching Hulscher's number to previously obtained cellular information. The detective provided that the department not only had obtained a number from Hulscher, but had downloaded his cellular phone. Based upon this information, ATF requested the evidence.

On January 17, 2017, SA Fair received, by mail, a DVD disc from the Huron Police Department. SA Fair immediately reviewed the contents. In his review, SA Fair realized that he had only received a partial download. On the same day SA Fair contacted the department to see if a complete download existed.

On January 18, 2017, SA Fair traveled to Huron and received the complete download. On the same day, the Government notified defense counsel, Ms. Kippley, of the evidence. The Government also notified Ms. Kippley that it anticipated the evidence to show Hulscher's contact with Hemsher and put Ms. Kippley on notice of its intent to use.

On January 19, 2017, the digital evidence was made available to counsel for both defendants. Following a cursory examination of the evidence, it became clear to the Government that the download was useful to the Government's case-in-chief. Specifically, the evidence demonstrates that Hulscher and Hemsher knew each other and were in fact in contact on dates relevant to the crime alleged.

Following disclosure of the cellular evidence, the Government filed a Notice of Intent to Offer Expert Testimony pursuant to Rule 702 on January 20, 2017.

Docket 205. Defendant Hulscher then filed a Motion to Exclude Evidence and Brief in Support of Motion on Monday, January 23, 2017. Docket 207; Docket 208. A motion hearing was held before the Honorable Karen E. Schreier on January 27, 2017, in which the Court denied the Motion to Exclude.

Following the Court's order, Defendant Hulscher filed a Motion to Suppress Evidence on January 31, 2017. Docket 223; Docket 224. Defendant Hulscher supports his motion on the basis of a violation of his Fourth Amendment rights. Specifically, the retention of, subsequent examination of, and intended use in the present matter. The Government resists the Motion.

III. Argument

    a. The March 2016 evidence satisfies the search warrant

"A search warrant must contain a description of the place to be searched" in order to comply with the fourth amendment's particularity requirement." [3] United States v. Curry, 911 F.2d 72, 76 (8th Cir. 1990). "The sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." See United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). See also United States v. Williams, 10 F.3d 590, 593 (8th Cir.1993). "Not only may an issuing judge 'draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, we have also recognized that law enforcement officers may make reasonable inferences in preparing affidavits

---

[3] "Whether the particularity requirement is ultimately satisfied depends upon the circumstances." United States v. Gamboa, 439 F.3d 796, 806–07 (8th Cir. 2006).

in support of a warrant.' " United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000) (citations omitted).

"Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." United States v. Summage, 481 F.3d 1075, 1077 (8th Cir. 2007) (emphasis original). See also United States v. Hager, 710 F.3d 830, 836 (8th Cir. 2013) (citation omitted). "Probable cause is determined based on 'the information before the issuing judicial officer." United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009). It is a fluid concept, focusing on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). Also, the judicial officer's finding of probable cause is entitled to deference. United States v. Bourbon, 819 F.2d 856, 859 (8th Cir.1987) See also United States v. Dishman, 377 F.3d 809, 811 (8th Cir.2004). Generally, "[w]e will not disturb a court's finding of probable cause "unless there was no substantial basis for that finding." United States v. Brackett, No. 15-2694, 2017 WL 242556, at *4 (8th Cir. Jan. 20, 2017).

Here, Judge Erickson, issued a lawful search of Defendant's cell phone on March 16, 2016. Judge Erickson was presented with an affidavit, which identified criminal behavior including counterfeiting and drug distribution. In drafting the affidavit, law enforcement relied upon the totality of the circumstances including: their investigation, Defendant's statements and

admissions, interviews, and the phone evidence, which was visible to law enforcement during the interview.

The search warrant commanded a search wide in scope. The following was authorized to be searched: "(1) the content of any texts, including but not limited to incoming texts, sent texts, draft texts and deleted texts that were sent or received by the cellular device; (2) incoming or outgoing cell phone call records by the cellular communication devices; (3) the content of the address book for the cellular communication devices; (4) video and/or photography stored on the phones or in the internal memory of the cellular communication devices; and (5) any other data on the communication device as it relates to this case."

The warrant identified that: proof had been made that the iPhone constituted evidence of the commission of a *criminal offense*; *fruits of a crime*, or *things otherwise criminally possessed*; and property designed or intended for use in, or which is or has been *used as the means of, committing a criminal offense*. As such, the search warrant authorized the examination of the *entire* phone.

Detective Spinsby examined the cell phone and copied and recovered information from the phone and subsequently provided that data for review. In conducting the logical extraction, Detective Spinsby sought only to find data that authorized by the warrant, even so this still required a review of voluminous data and information. Therefore, the evidence uncovered was not in violation of the Fourth Amendment. See United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir.) ("A lawful search extends to all areas and containers in which the object of the search may be found."), cert. denied, 502 U.S. 896, 112 S.Ct. 267, 116

L.Ed.2d 220 (1991). Moreover, the evidence obtained was found utilizing proper technique. All evidence seized was lawfully obtained, stored, and disclosed to the Government it is therefore admissible in the present matter. Additionally, the evidence relates only to the five enumerated categories of the search warrant. Therefore, the evidence should not be suppressed.

> b. Any specification of the precise manner to execute the warrant would be unreasonable

"The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant." United States v. Ramirez, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998) (citation omitted). "The Fourth Amendment, however, does not set forth some general "particularity requirement." United States v. Grubbs, 547 U.S. 90, 97, 126 S. Ct. 1494, 1500, 164 L. Ed. 2d 195 (2006). Rather, "[i]t specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.' Id. "We have previously rejected efforts to expand the scope of this provision to embrace unenumerated matters." Id. "Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search warrants also must include a specification of the precise manner in which they are to be executed." Id at 98. The Grubbs court identifies that "[n]othing in the language of the Constitution or in [the Supreme Court's] decisions interpreting that language suggests that, in addition to the requirements set forth in the text [of the Fourth Amendment],

search warrants also must include a specification of the precise manner in which they are to be executed." Id.

Courts have held that forensic examiners may employ forensic examination techniques that will broadly expose all or most of a storage medium's contents to human inspection, even if only briefly, in order to locate data particularly described by the warrant. See, e.g., United States v. Crespo-Rios, 645 F.3d 37, 43-44 (1st Cir. 2011). Moreover, "[i]t would extend the Warrant Clause to the extreme to require that, whenever it is reasonably likely that Fourth Amendment rights may be affected in more than one way, the court must set forth precisely the procedures to be followed by the executing officers." Dalia v. United States, 441 U.S. 238, 258, 99 S. Ct. 1682, 1694, 60 L. Ed. 2d 177 (1979).

In this matter, the warrant identified that: proof had been made that the iPhone constituted evidence of the commission of a *criminal offense*; contraband, the *fruits of a crime*, or *things otherwise criminally possessed*; and property designed or intended for use in, or which is or has been *used as the means of, committing a criminal offense*. As such, the search warrant authorized the examination of the *entire* phone for contents of crime. Thus, the search needed to be reasonably extensive to satisfy the warrant. The examination of the entirety of the phone was necessary.

Any significant limitation on the techniques Detective Spinsby used to find evidence within the scope of the warrant is inconsistent with Supreme Court precedent. See United States v. Cravero, 545 F.2d 406, 421 (CA5 1976) (on

petition for rehearing) (Noting police executing an arrest warrant commonly find it necessary to enter the suspect's home in order to take him into custody, and they thereby impinge on both privacy and freedom of movement); See, *e. g.,* United States v. Brown, 556 F.2d 304, 305 (CA5 1977); United States v. Gervato, 474 F.2d 40, 41 (CA3), cert. denied, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973) (supporting the idea that law enforcement executing search warrants on occasion must damage property in order to perform their duty). See also United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006) ("A computer search may be as extensive as reasonably required to locate the items described in the warrant."). As such, the method used by Detective Spinsby was lawful.

    c. Plain View

When evidence "not particularly described" in the warrant is located and seized, said evidence must meet an exception to the warrant requirement. United States v. Clay, 579 F.3d 919, 932 (8th Cir. 2009). One well-recognized exception is the plain view doctrine. Id. In considering computer search warrants, the other circuits have noted, "[o]nce it is accepted that a computer search must, by implication, authorize at least a cursory review of each file on the computer, then the criteria for applying the plain-view exception are readily satisfied." United States v. Williams, 592 F.3d 511, 522 (4th Cir. 2010). See also United States v. Stabile, 633 F.3d 219, 242 (3d Cir. 2011) ("the Government properly examined the file names listed in the Kazvid folder pursuant to the plain view doctrine"); United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003).

In the present matter the affidavit established probable cause for a warrant, which was authorized for a particular item, Defendant's iPhone. "[A] lawful search includes all areas where the items listed in the warrant might be found." United States v. Darr, 661 F.3d 375, 379 (8th Cir. 2011). As such, the plain view doctrine renders the evidence admissible. As Detective Spinsby had to employ a logical extraction, a complex investigation into the phone's entire contents, it is reasonable that he would have come across a high volume of non-counterfeit-related information. Therefore, the plain view exception is applicable to said evidence.

### d. Defendant has no privacy interest in the evidence at issue

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The touchstone of [Fourth] Amendment analysis has been the question whether a person has a 'constitutionally protected reasonable expectation of privacy.'" United States v. Douglas, 744 F.3d 1065, 1069 (8th Cir. 2014) (Citing Oliver v. United States, 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). "To contest the validity of a search, a person must have a reasonable expectation of privacy in the place searched." United States v. Turner, 781 F.3d 374, 382 (8th Cir.), cert. denied, 136 S. Ct. 208, 193 L. Ed. 2d 160 (2015), and cert. denied, 136 S. Ct. 280, 193 L. Ed. 2d 204 (2015), reh'g denied, 136 S. Ct. 529, 193 L. Ed. 2d 417 (2015), and cert. denied, 136 S. Ct. 493, 193 L. Ed. 2d 359 (2015) (Citing United States v. Randolph, 628 F.3d 1022, 1026 (8th Cir.2011)). To establish a legitimate

expectation of privacy, one must establish (1) an "asserted a subjective expectation of privacy" "in the place searched or object seized," and (2) an "subjective expectation is objectively reasonable." Id. (Citing United States v. Kiser, 948 F.2d 418, 423 (8th Cir.1991). The courts note, the first question is a question of fact, the second is a question of law. Id.

Here, "even if we were to assume [the defendant] had a subjective expectation of privacy…. [s]ociety would not be 'prepared to accept that expectation as objectively reasonable.' " United States v. Douglas, 744 F.3d 1065, 1069 (8th Cir. 2014) (Noting expectation of privacy in plastic trash bag containing shotgun that was placed inside rusted-out refrigerator frame lying on its side with no doors in open field was not objectively reasonable). Like Douglas, here it would be unreasonable to objectively believe that Defendant had a reasonable expectation of privacy in the evidence at issue. This evidence is *previously seized and searched* evidence obtained by Huron law enforcement. The Huron Police Department, retained the evidence and pursuant to the current investigation a request was made by ATF to review the evidence. This evidence was lawfully seized, searched, secured, and retained the evidence previously.[4]

---

[4] Defendant cites Riley v. California, to support his privacy interest in the phone. While, the Riley court does address that "[c]ell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information about dangerous criminals." Riley v. California, 134 S. Ct. 2473, 2493, 189 L. Ed. 2d 430 (2014). Riley, discussed and rejected a warrantless search of a phone pursuant to arrest and is therefore not controlling. Id. However, the Riley court did note, that "it is not that the information on a cell phone is immune from search; it is instead that a warrant is generally required before such a search, even when a cell phone is seized incident to arrest. Our cases have historically recognized that the warrant requirement is "an important working part of our machinery of government," not merely "an inconvenience to be somehow 'weighed' against the claims of police efficiency." Riley, 134 S. Ct. at 2493.

e. Good Faith is applicable

"The ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression." United States v. Houston, 665 F.3d 991, 994 (8th Cir. 2012). Yet, this exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Id (Citing United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Moreover, "a court may consider whether the good-faith exception applies before conducting probable cause analysis." Id. (Citing United States v. Proell, 485 F.3d 427, 430 (8th Cir.2007)).

"Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." Id. "The 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.'" Id. (Quoting United States v. Puckett, 466 F.3d 626, 630 (8th Cir.2006)) (alterations in original). The good-faith exception does not apply:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable* "; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

Id at 995.

The Defendant cites the decision of United States v. Ganias. However, the Defendant cites the vacated panel decision applying the exclusionary rule. This ultimately was vacated by the subsequent *en banc* decision, which held that the government relied in good faith on a 2006 warrant to search forensic images of computers from the defendant's office. Further, the Court declined to reach the merits of the defendant's argument that the two-and-a-half-year retention and subsequent search of "over-seized" data from his accounting office violated the Fourth Amendment. Although the Court did not reach the merits of the Fourth Amendment claim, the court discusses why digital evidence is different from paper files, and the need to retain complete forensic images of digital media while cases are ongoing.[5]

In the present matter, even if the Court were to find a legal invalidity with the March 16, 2016, search warrant; ATF acted in good faith when he requested and relied on the evidence obtained from the Huron Police Department. In examining the four corners of the affidavit as well as the warrant, there is no evidence to suggest that one of the four exceptions of the good-faith requirement are applicable in this matter. Therefore, the good-faith exception is applicable and the exclusionary rule should not be applied in this matter.

---

[5] Notably, this issue has not been addressed by the Eight Circuit.

IV. Conclusion

In sum, the Government respectfully requests that the Court deny Defendant's motion in its entirety.

Dated and electronically filed this 6th day of January, 2017.

RANDOLPH J. SEILER
United States Attorney

/s/ Tamara P. Nash
_____
Tamara P. Nash
Special Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Telephone: (605)330-4400
Facsimile: (605)330-4410
E-Mail: Tamara.Nash@usdoj.gov

/s/ John E. Haak

John E. Haak
Assistant United States Attorney
P.O. Box 2638
Sioux Falls, SD 57101-2638
Telephone: (605)330-4000
Facsimile: (605)330-4410
E-Mail: Jeff.Clapper@usdoj.gov