UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>ROBERT JOHN HULSCHER,<br><br>        Defendant. | 4:16-CR-40070-01-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING MOTION TO SUPPRESS |

**NATURE AND PROCEDURE OF THE CASE**

Defendant Robert John Hulscher is charged with two counts: (1) stealing firearms and aiding and abetting stealing firearms under 18 U.S.C. §§ 924(1) and 924(2); and (2) felon in possession of firearms under 18 U.S.C. § 922(g)(1). Hulscher moves to suppress "all evidence from the advanced logical extraction" of his cell phone. Docket 223 at 1. The motion was referred to United States Magistrate Judge Duffy for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

During the evidentiary hearing, neither party provided testimony, but the court received eleven exhibits. The court also took judicial notice of the exhibits submitted with the parties' briefs on Hulscher's motion to suppress. For the following reasons, the report and recommendation is adopted as modified by this opinion.

**LEGAL STANDARD**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

**FACTS**

Hulscher's motion to suppress revolves around the review of his cell phone data by two law enforcement agencies: (1) the Huron Police Department and (2) the Bureau of Alcohol, Tobacco, and Firearms (ATF). Both agencies investigated Hulscher on unrelated charges. The Huron Police Department investigated Hulscher on forgery, counterfeiting, and identity theft charges. ATF investigated Hulscher for various firearm offenses. During the investigation by the Huron Police Department, Sergeant Mark Johnson applied for a warrant to search Hulscher's Apple iPhone. The Third Judicial Circuit of South Dakota issued a search warrant allowing any law enforcement officer in

Beadle County to search the iPhone for "(1) The content of any texts, including but not limited to incoming texts, sent texts, draft texts and deleted texts that were sent or received by the cellular communication devices. (2) Incoming or outgoing cell phone call records by the cellular communication devices. (3) The content of the address book for the cellular communication devices. (4) Video and/or photographs on the phones or stored in the internal memory of the cellular communication devices. (5) Any other data on the communication device as it relates to this case." Exhibit 2 at 1-2.

    Detective Casey Spinsby of the Huron Police Department extracted the data from the iPhone and created a digital copy. Detective Spinsby performed a search of the data, and in his official report, Detective Spinsby noted several pieces of evidence related to the Huron investigation. Detective Spinsby also noted 531 messages related to the sale, use, or purchase of illegal drugs. As part of his analysis of the cell phone, Detective Spinsby "segregated the data on the phone that was relevant to the Huron state court prosecution and saved that data separately." Docket 251 at 6 (citing Exhibit F). Hulscher later pleaded guilty to one charge of Grand Theft-More than $1,000 and Less than or equal to $2,500. Detective Spinsby was not looking for and did not find any information related to the illegal possession of firearms.

    In preparation for Hulscher's federal trial, ATF Agent Brent Fair reviewed a National Crime Information Center report on Hulscher. The report indicated that Hulscher had been arrested by the Huron Police Department. Agent Fair contacted the Huron Police Department and learned that it had data taken

from Hulscher's iPhone. Agent Fair requested a copy of the data and initially received a DVD disc containing Detective Spinsby's segregated data (Exhibit F) that related only to the state charges. Agent Fair then contacted the Huron Police Department again and discovered that the Huron Police Department also had a complete, unsegregated digital copy of Hulscher's iPhone data. Because the complete digital copy of Hulscher's iPhone data could not be sent electronically, Agent Fair drove to Huron with another ATF agent, obtained a complete digital copy of Hulscher's iPhone data, and reviewed the data on his return to Sioux Falls. Agent Fair did not get a search warrant before he reviewed the data.

The government then notified Hulscher's counsel that it intended to use the complete, unsegregated iPhone data (Exhibit E) at trial. Hulscher responded by filing this motion to suppress the complete, unsegregated iPhone data (Exhibit E). Hulscher does not appear to object to the admission of the segregated data (Exhibit F). *See* Docket 224 at 5, 7, 9, and 10. Magistrate Judge Duffy held a hearing on the motion and issued a report and recommendation granting Hulscher's motion to suppress. The government has filed its responsive brief and has four primary objections: (1) that Agent Fair's review of the iPhone data constituted a search within the meaning of the Fourth Amendment; (2) that Agent Fair did not have knowledge of the Beadle County warrant; (3) that the plain view doctrine does not apply; and (4) that the exclusionary rule should apply to this case.

4

## DISCUSSION

**I.     Agent Fair conducted a search of Hulscher's iPhone.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. The government, however, argues that Agent Fair never conducted a search of Hulscher's iPhone. Docket 255 at 1-2. The government argues Agent Fair merely conducted a subsequent viewing of evidence that had already been seized.[1] *Id.* Thus, the issue before the court is whether a subsequent viewing of a copy of electronic data from a cell phone constitutes a search when the data was collected under a valid search warrant and was unresponsive to that warrant.

This specific fact scenario is relatively new to Fourth Amendment analysis, and as noted by Professor Orin Kerr, "[e]xisting precedents dealing with the treatment of copies of seized property are surprisingly difficult to find." *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 562 (2005). Despite the lack of precedent on how courts should treat digital copies of electronic information, "[t]here are two obvious choices: courts can treat searches of copies just like searches of originals or else treat copies merely as data stored on government-owned property." *Id.* Here, the government argues for the latter. The government argues that cell phone data can be shared among law enforcement agencies like a box of physical evidence.

---

[1] Hulscher's brief appears only to object to the search of the non-segregated, nonresponsive data (Exhibit E). *See* Docket 224 at 5, 7, 9, and 10. Because the parties' disagreement is limited to the complete, unsegregated data, the court limits the application of this opinion to the data in dispute.

5

As the Supreme Court explained in *Riley*, however, cell phone data is not the same as physical evidence. In *Riley*, the issue before the Supreme Court was whether cell phones could be searched incident to arrest like other physical objects found on arrestees. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). The court held that because cell phones contain immense amounts of personal information about people's lives, they are unique, and law enforcement "officers must generally secure a warrant before conducting such a search." *Id.* at 2485. This court reaches a similar conclusion. As explained by Magistrate Judge Duffy, "[t]he chief evil [that] the Fourth Amendment was intended to address was the hated 'general warrant' of the British crown." Docket 251 at 10 (citing *Payton v. New York*, 445 U.S. 573, 583-84 (1980)). If the scope of the Beadle County warrant was not limited to the Hurron Police Department's counterfeiting investigation, the search warrant would have been an invalid "general warrant." *Id.* at 16 (citations omitted). As explained by Magistrate Judge Duffy, "[t]he conclusion is inescapable: Agent Fair should have applied for and obtained a second warrant [that] would have authorized him to search Mr. Hulscher's cell phone data for evidence of firearms offenses." *Id.* at 32 (citations omitted).

The government argues that this conclusion is "impractical and is contrary to the nature of police investigations and collaborative law enforcement among different agencies." Docket 255 at 1-2. The government's position, however, overlooks the ultimate touchstone of the Fourth Amendment: reasonableness. *Riley*, 134 S. Ct. at 2482. According to the

government, law enforcement agencies can permanently save all unresponsive data collected from a cell phone after a search for future prosecutions on unrelated charges. If the government's argument is taken to its natural conclusion, then this opens the door to pretextual searches of a person's cell phone for evidence of other crimes. Under the government's view, law enforcement officers could get a warrant to search an individual's cell phone for minor infractions and then use the data to prosecute felony crimes. No limit would be placed on the government's use or retention of unresponsive cell phone data collected under a valid warrant.

As the Supreme Court noted in *Riley*, cell phone data can include immense amounts of information such as "thousands of photos," months of correspondence, or "every bank statement from the last five years." *Id.* at 2493. The search of a cell phone can provide far more information than the most exhaustive search of a house. *Id.* at 2491. This is especially true because cell phones collect many different kinds of data in one place such as "an address, a note, a prescription, a bank statement, a video . . . ." *Id.* at 2489. "The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions . . . ." *Id.* The government's position, which would allow for mass retention of unresponsive cell phone data, is simply inconsistent with the protections of the Fourth Amendment. The government's objection on this point is overruled.

II. **Whether Agent Fair knew about the Beadle County warrant is not relevant.**

The government objects to Magistrate Judge Duffy's conclusion that "Agent Fair cannot be said to have acted pursuant to a search warrant . . . ." Docket 255 at 2; Docket 251 at 15. The government, however, introduced no evidence that Agent Fair knew about the warrant. But even if Agent Fair was aware of the Beadle County warrant, the warrant was limited to a search for evidence relating to the counterfeiting charges, and "a reasonable officer who read the search warrant would have known that." Docket 251 at 20. Thus, at best, the government's position is that Agent Fair knew about the Beadle County search warrant and disregarded its parameters. Under either fact scenario— Agent Fair knew about the warrant or did not know about the warrant—a "reasonably well-trained officer would have known that the search was illegal despite the issuing judge's authorization." Docket 251 at 19-20 (citing *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008).

III. **The plain view exception does not apply to this case.**

The government "objects to the conclusion that the plain view exception is not applicable [to this case]." Docket 255 at 3. In *Horton v. California*, 496 U.S. 128, 135 (1990), the United States Supreme Court explained that the plain view doctrine applies when law enforcement has a prior justification for a search and inadvertently comes across a piece of incriminating evidence. As explained above, Agent Fair's search of the complete, unsegregated iPhone data lacked a sufficient justification. Thus, the plain view doctrine does not apply. The government's objection on this point is overruled.

The government also objects to the conclusion that the plain view doctrine does not apply to digital searches generally. Because this court can rule on the suppression motion based solely on the facts of this case, the government's objection is sustained on this point.

### IV. The exclusionary rule applies to the iPhone data.

A violation of the Fourth Amendment does not automatically trigger the application of the exclusionary rule. *Herring v. United States*, 555 U.S. 135, 141 (2009) (citing *United States v. Leon*, 468 U.S. 897, 905-06 (1984)). The court must determine "the efficacy of the rule in deterring Fourth Amendment violations in the future." *Id.* at 141 (citing *United States v. Calandra*, 414 U.S. 338, 347-355 (1974); *Stone v. Powell*, 428 U.S. 465, 486 (1976)). The court must weigh the benefits of applying the rule against its costs. *Id.* When weighing these competing values, the balance—in this case—tips toward excluding the iPhone data. *See id.* (citing *Leon*, 468 U.S. at 910).

As noted by the Supreme Court in *Herring*, "[t]he principle cost of applying the [exclusionary] rule is, of course, letting guilty and possibly dangerous defendants go free . . . ." *Id.* (quoting *Leon*, 468 U.S. at 908). Here, the cost of applying the exclusionary rule is minimized because the evidence is peripheral in nature and not directly related to the firearms offense. The government's actions also suggest the evidence is not necessary for a conviction. Prior to Agent Fair's search of the iPhone data, the government was ready to proceed with trial on January 3, 2017. Minutes before voir dire, the parties addressed a late discovery issue, and the court granted a continuance.

9

If the issue had not come before the court, the government would have tried its case, and the iPhone data would not have been used. In contrast, the benefits of applying the exclusionary rule in this case are clear. If the exclusionary rule is not applied, law enforcement agencies will have carte blanche authority to obtain a warrant for all data on a cell phone, keep the unresponsive data forever, and then later use the data for criminal prosecutions on unrelated charges—erasing the protections specifically contemplated in *Riley*. Based on this weighing, the government's objection is overruled on this point. The unsegregated iPhone data (Exhibit E) is suppressed.

Although the issue was not explicitly addressed in the parties' briefs or the hearing before Magistrate Judge Duffy, the court notes that the iPhone data may be used for impeachment purposes if Hulscher testifies at trial. The Eighth Circuit Court of Appeals has explained that "illegally seized evidence, even if inadmissible, may be used to impeach a testifying defendant." *United States v. Rowley*, 975 F.2d 1357, 1361 (8th Cir. 1992). Thus, if Hulsher testifies at trial and his testimony is inconsistent with the iPhone data, the data may be used for impeachment.

## CONCLUSION

The government's review of Hulscher's unsegregated iPhone data constituted a search under the Fourth Amendment. Because the *Leon* good faith exception and the plain view doctrine do not apply, the government's search of Hulscher's iPhone data violated Hulcher's Fourth Amendment rights. Because the benefits of applying the exclusionary rule outweigh the costs of

applying the rule, the unsegregated iPhone data is excluded. Therefore, it is ORDERED

    (1) That government's objections 1, 2, 4, 5, and 6 are overruled.

    (2) That government's objection 3 is sustained.

    (3) That Magistrate Judge Duffy's report and recommendation [Docket 251] is adopted as modified by this order.

    (4) That Hulscher's motion to suppress Exhibit E and all evidence related to Exhibit E (Docket 223) is granted.

DATED this 17th day of February, 2017.

                              BY THE COURT:

                              /s/ *Karen E. Schreier*
                              KAREN E. SCHREIER
                              UNITED STATES DISTRICT JUDGE